Sherry Radack, Chief Justice
In this appeal, we consider whether (1) a landowner can maintain a trespass-to-try-title ultra vires action against the Texas Land Commissioner, in light of the Texas Supreme Court's opinion in Hall v. McRaven , 508 S.W.3d 232 (Tex. 2017) ; (2) the bed of a bayou that is "tidally influenced" belongs to the State or was conveyed to the landowner via "the Small Bill"[1] ; and (3) a finding that the landowner owns fee simple title to the disputed property is a proper remedy in a trespass-to-try-title ultra vires action.
BACKGROUND
The Patent
In 1872, the State of Texas granted a patent to Sophronia Barrow for a 160-acre tract of land, which is described in the "Barrow Survey" and includes a portion of Lone Oak Bayou. Lone Oak Club. L.L.C. ["the Club"] acquired title to the land described in the Barrow Survey through a regular chain of conveyances as an assignee in privity with Sophronia Barrow.
The Dispute
A dispute arose over whether the Club could prohibit duck hunters from building duck blinds in the bed of Lone Oak Bayou, so it inquired with the Texas General Land Office ["GLO"] regarding the extent of state ownership in Lone Oak Bayou "and the attendant waterways and their beds adjacent to and flowing through" the Club's property. On March 25, 2009, the director of GLO's surveying division, along with surveying staff, visited Lone Oak Bayou to "make a visual inspection of the bayou and the lakes, and then give an opinion on the ownership" of the land under Lone Oak Bayou.
After visiting Lone Oak Bayou, the director of the surveying divisions sent an internal memorandum stating that "Lone Oak Bayou and the connected lakes are tidal waters" and pursuant to common law, "the boundary between the state owned submerged land along the tidally influenced Lone Oak Bayou and connected lakes is the line of mean high water (MHW)." The director further stated that "the stretch of Lone Oak Bayou and the lakes directly connect to the bayou, which we inspected March 25, 2009, are state-owned submerged lands; the waters are tidally influenced, public waterways."
After the GLO's internal memo was prepared, on April 16, 2009, Senior Deputy *770 Land Commissioner LaNell Aston sent a letter to the Club regarding its inquiry about ownership of the bed of the bayou within its property and whether the public was entitled to use those beds. Aston attached the memo prepared by the director of the surveying division and informed the Club of GLO's conclusion that "any part of Lone Oak Bayou ... which [is] located below the line of mean high water [is] owned by the state and are therefore open to public use." Aston's letter noted the Club's contention that the Small Bill applied to Lone Oak Bayou's beds, but stated that GLO "has always held to the opinion that the Small Bill does not apply to tidally influenced waterways." On September 21st of the same year, Aston sent another letter to the Club, confirming "GLO's position [that] ... the beds of tidally influenced watercourses are the property of the State."
The Lawsuit
On September 13, 2012, the Club filed a trespass-to-try-title suit against Jerry Patterson, George P. Bush's predecessor as Land Commissioner of the GLO, Lanell Aston, the Senior Deputy Land Commissioner, and Jeff Davis, the Director of Asset Inspection. In its suit, the Club alleged that the defendants acted ultra vires by acting as state officials and "attempt[ing] to cloud and impair Plaintiff's title to the Lands by claiming Plaintiff does not have title to the beds and abandoned beds of water courses and navigable streams on the lands located within the patents and awards of Plaintiff's deeds." The petition further alleged that the defendants "are interfering with Plaintiff's right to possession and quiet enjoyment of its property and are encouraging third persons and members of the general public to commit trespass and to hunt without consent upon the properties and beds, using the claims of the defendant as justification and excuse." The Club concluded that "the claims and wrongful assertions of the defendants unreasonably interfere with Plaintiff's right to possession, use, control, and quiet enjoyment of the beds and properties[,]" and requested that the trial court remove the cloud on the property's title and award title to and possession of the property to the Club. The Club did not seek monetary damages. Once Patterson left office and Davis and Aston left their positions at GLO, the Club substituted his successor-in-office, George P. Bush ["the Land Commissioner"], as the sole defendant in the case.
The Motions
On August 12, 2016, the Club filed a motion for summary judgment, arguing that it was "entitled to summary judgment, as a matter of law, that it owns title to the Barrow Survey, including the bed of the water course known as Lone Oak Bayou, by virtue of a regular chain of conveyances from the sovereignty of the soil." Specifically, the Club argued that "[t]he Small Bill grants the patentee title to the beds of all watercourses and navigable streams lying within a patent or survey so as to ensure title to the full acreage shown in the patent[,]" and that "[t]he land under the Bayou, if not already owned by the patentee and her successors, was granted in 1929 to Sophronia Barrow with the passage of the Small Bill."
On September 14, 2016, the Club filed a motion to confirm subject-matter jurisdiction. Although the Land Commissioner had not filed a plea to the jurisdiction, the Club felt compelled to address subject-matter jurisdiction, explaining that the "Club's concern is that, notwithstanding the admission of subject matter jurisdiction by the current Land Commissioner as stated by subordinates of the current Attorney General, the issue of subject-matter jurisdiction could be raised later by an appellate court, a different Land Commissioner, or a different Attorney General."
*771 On October 5, 2016, the Land Commissioner filed a cross motion for summary judgment, contending that the trial court lacked subject-matter jurisdiction because the action was not ripe. Specifically, the Land Commissioner argued that none of the actions taken by him or his agents were "certain or specific enough to address an anticipated injury against any of Plaintiff's asserted rights in the Barrow Survey. The Land Commissioner further argued that, even if the trial court found that it had subject-matter jurisdiction, the State owned the bed of Lone Oak Bayou as a matter of law as "the Small Bill did not establish private ownership of Lone Oak Bayou because [it] did not explicitly include land submerged by coastal waters."
The Trial Court's Ruling
The trial court granted the Club's motion to confirm subject-matter jurisdiction, granted the Club's motion for summary judgment, and denied the Land Commissioner's motion for summary judgment.
With regard to subject-matter jurisdiction, the trial court made the following findings:
1. This action is an ultra vires trespass to try lawsuit against the Defendant, George P. Bush, the Land Commissioner of the Texas General Land Office.
2. This action concerns the portion of the bed of Lone Oak Bayou located in the Barrow Survey.
3. The plaintiff, Lone Oak Club, LLC, claims title to the portion of the bed of Lone Oak Bayou located in the Barrow Survey.
4. The Defendant, and his predecessor, action through employees of the GLO, claims title, on behalf of the State of Texas, to the portion of the bed of Lone Oak Bayou located in the Barrow Survey.
5. The Defendant's answer does not contain a plea controverting this Court's subject matter jurisdiction.
6. The Defendant, and his predecessor, acting through employees of the GLO, committed ultra vires acts, by claiming title, on behalf of the State of Texas, to the portion of the bed of Lone Oak Bayou located in the Barrow Survey in violation of the Small Bill, Tex. Rev. Civ. Stat. Ann. art 5414a.
7. Pursuant to State v. Lain, 162 Tex. 549, 349 S.W.2d 579 (1961), the Defendant does not have sovereign immunity from this action.
8. Due to conflicting claims of title, this controversy is ripe.
9. The Court has subject matter jurisdiction.
The trial court then granted the Club's motion for summary judgment and denied the Land Commissioner's motion for summary judgment. The Final Summary Judgment provided:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT the Plaintiff owns fee simple title to the portion of the bed of Lone Oak Bayou located in the Barrow Survey, subject to the following:
1. The State's title, right, or interest, in and to the sand and gravel lying within the bed of Lone Oak Bayou; and
2. The rights of the public to navigate and to use the waters of Lone Oak Bayou.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED THAT the Plaintiff shall have a writ of possession for surface rights only and specifically excluding any mineral rights.
*772 The Appeal
The Land Commissioner appeals, contending for the first time that he is immune from the suit based on a case from the Texas Supreme Court- Hall v. McRaven -which was decided just one day after summary judgment was granted in the trial court below. The Land Commissioner also argues that, even if the trial court had subject-matter jurisdiction, it erred in granting summary judgment because the Small Bill does not apply to surface waters that are influenced by tidal waters. Finally, the Land Commissioner contends that the trial court erred in decreeing that the Club owned fee simple title to the disputed property.
SUBJECT-MATTER JURISDICTION
The Land Commissioner contends that this case is not a proper ultra vires case and that the Land Commissioner is entitled to sovereign immunity. The Land Commissioner further argues that the issue of sovereign immunity, i.e. subject-matter jurisdiction, is dispositive.
Applicable Law and Standard of Review
Sovereign immunity, when applicable, deprives a trial court of subject-matter jurisdiction. Tex. Dept. of Parks and Wildlife v. Miranda , 133 S.W.3d 217, 224 (Tex. 2004). "[S]ubject-matter jurisdiction is essential to a court's power to decide a case." Bland Indep. Sch. Dist. v. Blue , 34 S.W.3d 547, 553-54 (Tex. 2000). It is not presumed and it may not be waived. Tex. Ass'n Bus. v. Tex. Air Control Bd. , 852 S.W.2d 440, 443-44 (Tex. 1993). If a trial court lacks jurisdiction, then an appellate court only has jurisdiction to set the judgment aside and dismiss the cause. Fulton v. Finch , 162 Tex. 351, 346 S.W.2d 823, 827 (1961). Sovereign immunity can be raised for the first time on appeal. See Rusk State Hosp. v. Black , 392 S.W.3d 88, 93 (Tex. 2012).
A trial court decides whether it has jurisdiction by reviewing the pleadings and any evidence relevant to the jurisdictional inquiry. See Bland , 34 S.W.3d at 555. When, as here, jurisdictional facts are not in dispute, we review de novo the legal question of whether the trial court has subject-matter jurisdiction. Miranda , 133 S.W.3d at 226. We agree that the issue of sovereign immunity, if applicable, would be dispositive in this case and would limit this Court's jurisdiction. Thus, we address this issue first.
Analysis
Prior to 2017, subject-matter jurisdiction would not have been an issue in this case. In State v. Lain , the plaintiff sued several governmental officials for dredging a channel over his property. 162 Tex. 549, 349 S.W.2d 579, 580 (1961). The governmental officials filed a plea to the jurisdiction based on sovereign immunity. Id. The supreme court stated as follows:
When suit for recovery of title to and possession of land, filed without legislative consent, is not against the state itself, but is against individuals only, the mere assertion by pleading that the defendants claim title or right of possession as officials of the state and on behalf of the state, will not bar prosecution of the suit.
Id. at 581.
In so holding, the Lain court noted:
One who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee, and the owner should not be required to obtain legislative consent to institute a suit to oust him simply because he asserts a good faith but overzealous claim that title or right of possession *773 is in the state and that he is acting for or on behalf of the state.
Id.
The Lain court then addressed the procedure to be followed in such cases.
[W]hen officials of the state are the only defendants, or the only remaining defendants [in a trespass-to-try title case], and they file a plea to the jurisdiction based on sovereign immunity, it is the duty of the court to hear evidence on the issue of title and right of possession and delay action on the plea until the evidence is in. If the plaintiff fails to establish his title and right of possession, a take nothing judgment should be entered against him as in other trespass to try title cases. If the evidence establishes superior title and right of possession in the sovereign, the officials are rightfully in possession of the sovereign's land as agents of the sovereign and their plea to the jurisdiction based on sovereign immunity should be sustained. If, on the other hand, the evidence establishes superior title and right of possession in the plaintiff, possession by officials of the sovereign is wrongful and the plaintiff is entitled to relief.
Id. at 582. The procedure established in Lain has been followed in trespass-to-try-title cases against governmental officials since 1961. See , e.g., Porretto v. Patterson , 251 S.W.3d 701, 710 (Tex. App.-Houston [1st Dist.] 2007, no pet.) (relying on Lain ); John G. & Marie Stella Kenedy Mem'l Found. v. Mauro , 921 S.W.2d 278, 282 (Tex. App.-Corpus Christi 1995, writ denied) (relying on Lain ); State v. Noser , 422 S.W.2d 594, 597 (Tex. Civ. App.-Corpus Christi 1967, writ ref'd n.r.e.) (relying on Lain ); see also Tex. Parks and Wildlife Dept. v. Sawyer Trust , 354 S.W.3d 384, 393 (Tex. 2011) ("If a government official acting in his official capacity possesses property without authority, then possession is not legally that of the sovereign. Under such circumstances, a defendant official's claim that title or possession in on behalf of the State will not bar the suit.").
However, in 2017, the Texas Supreme Court decided Hall v. McRaven , 508 S.W.3d 232 (Tex. 2017). While not a trespass-to-try-title case, the Land Commissioner contends that McRaven nevertheless limits the ability of a plaintiff to bring an ultra vires action against a governmental official like himself.
In McRaven , the Chancellor of the University of Texas System, acting in accordance with procedures set up by the Board of Regents, refused to give a Board member access to unredacted student records after deciding that those records were protected under a federal privacy law. 508 S.W.3d at 236-37. Unsatisfied with receiving redacted student records, the Board member sued McRaven, alleging that he acted ultra vires in refusing to provide the unredacted information. Id. at 237. Specifically, the Board member alleged that McRaven had no authority to misapply the federal privacy law and wrongfully withhold the requested records. Id.
The supreme court assumed that McRaven's interpretation of the federal privacy law was erroneous, id. at 237 n.1, but concluded that his misinterpretation of the federal statute was not an ultra vires act because his authority to construe the federal statute in response to record requests-his enabling authority-came from a regents' rule,[2] not the federal statute itself. Id. at 241-42. The supreme court concluded that this rule gave McRaven "unconstrained" authority to determine whether a board member could review information protected by the federal *774 privacy law. Id. at 242. "When the ultimate and unrestrained objective of an official's duty is to interpret a collateral law, a misinterpretation is not overstepping such authority, it is a compliant action even if ultimately erroneous." Id. Because the "Board instructed [McRaven] to redact information he determined protected under [the federal privacy law[,]" and "he did just that[,]" no ultra vires claim against him would lie. Id.
The Land Commissioner contends that his interpretation of the Small Bill, even if erroneous, will not give rise to an ultra vires claim against him because it involves the interpretation of a "collateral law" and that, "[l]ike the chancellor in McRaven , Commissioner Bush acted within his authority to determine the method for calculating the boundary line, regardless of whether his interpretation of the Small Bill was 'right or wrong.' "
In support of his position that interpretation of the Small Bill is merely collateral to his duties as Land Commissioner, he points to several statutes that require him to "execute and perform all acts and other things relating to public real property of the state or rights of individuals in public real property"; "review and keep inventory records of all real property owned by the state"; "verify the accuracy of inventory records" of any state agency or office; "identify real property owned or controlled by the state that is not being used or is being substantially underused" and make recommendations regarding the use of that property; grant easements over state-owned land; and appoint a surveyor to determine littoral boundaries, which is defined as the boundary between state-owned submerged land and privately-owned littoral property.[3] These enabling statutes, the Land Commissioner contends, give him the "authority, and indeed the responsibility, to identify public lands[,]" and that, "[e]ven if Commissioner Bush misinterpreted the Small Bill in his determination of public lands, [he] complied with the directive to identify such lands and thus acted within his authority."
We disagree with such a broad interpretation of the Land Commissioner's authority to interpret laws relating to state property. Essentially, the Land Commissioner contends that Lain has been overruled, sub silentio, by McRaven , and that he alone has the discretion to interpret the Small Bill to claim what may be private property for the State, and that, even if his interpretation is wrong, he cannot be sued in a trespass-to-try-title action.
While the Land Commissioner certainly has the authority to do those things listed above, and to take the Small Bill in consideration in doing so, none of those "enabling statutes" give him the explicit authority[4] to interpret the Small Bill and to make that interpretation binding on landowners who contend that the possession of their property has been interfered with by the Commissioner. In short, the Commissioner does not have a limited right to be wrong when the interpretation of the Small Bill is concerned.
If a landowner cannot challenge a claim to its title by way of a trespass-to-try-title action, he would have no remedy unless he deliberately violated the state's claim to the property and the state sued to protect its alleged superior right or the State's action in regard to the property amounted to a constitutional taking. The supreme *775 court has rejected putting landowners in such a position.
In Sawyer , a landowner sued the Texas Parks & Wildlife Department, alleging that its claim to a riverbed on the landowner's property was a constitutional taking. 354 S.W.3d at 386. The court held that the landowner could not maintain a declaratory-judgment action against the State because of sovereign immunity and that a constitutional takings claim would not lie under the circumstances of that case; however, the supreme court reversed and remanded the case to allow the landowner to plead a trespass-to-try-title case against the governmental officials pursuant to Lain . Id. In so holding, the supreme court stated that "the issue [of whether the State owned the riverbed] is one for judicial determination[,]" id. at 390, recognizing that the way to do so was through an ultra vires action against the governmental official. Id. at 393-94. The supreme court further stated:
The Trust and the dissent point out that the Department is in a unique position. It has sovereign immunity from the Trust's suit to determine title to the streambed. Though the Trust strongly disagrees with the Department's claim of navigability, the Trust seemingly has little recourse if the Department's position that the stream is navigable cannot be challenged by an ultra vires suit. The Department suggests that the Trust could take materials from the streambed and if the State sought civil damages filed or criminal charges, the State would have to prove it owned the materials in the streambed by proving the Salt Fork is navigable. A landowner should not be put in such an untenable position if it can be avoided. And while we disagree that the facts before us constitute a constitutional taking, we conclude that they constitute "possession" of the streambed by the State for the purposes of Lain .
Id. (emphasis added).
We agree that Lain provides the mechanism through which a landowner may seek redress for a challenge to his title to land when then land is claimed by an official on behalf of the State. There is nothing in the text of McRaven to suggest that the opinion was intended to overrule over 50 years of case law-case law that has been reaffirmed by the supreme court as recently as 2011-holding that a trespass-to-try-title action against a governmental official allegedly acting ultra vires is a property mechanism for resolving title disputes under these circumstances. As stated by the concurrence in Sawyer Trust , "[g]overnment officials cannot choose which properties the State owns; our constitution and statutes set those parameters, and our courts decide whether they have been satisfied." Id. at 395.
Accordingly, the trial court properly determined that it had subject-matter jurisdiction over this case.
INTERPRETATION OF THE SMALL BILL
Having determined that the trial court had subject-matter jurisdiction, we turn to the merits of the case and decide whether the trial court properly granted the Club's motion for summary judgment and denied the Land Commissioner's motion for summary judgment. To do so, we must decide whether the trial court properly interpreted and applied the Small Bill to the property dispute in this case.
Standard of Review and Applicable Law
We review the trial court's grant of a summary judgment de novo. Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex. , 253 S.W.3d 184, 192 (Tex. 2007) ;
*776 Valence Operating Co. v. Dorsett , 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional summary judgment motion, the movant bears the burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c) ; Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding , 289 S.W.3d 844, 848 (Tex. 2009).
When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, we review both parties' summary judgment evidence and determine all questions presented. Dorsett , 164 S.W.3d at 661 ; FM Props. Operating Co. v. City of Austin , 22 S.W.3d 868, 872 (Tex. 2000). Each party bears the burden of establishing that it is entitled to judgment as a matter of law. City of Santa Fe v. Boudreaux , 256 S.W.3d 819, 822 (Tex. App.-Houston [14th Dist.] 2008, no pet.) ; see also TEX. R. CIV. P. 166a(c) ("The judgment sought shall be rendered forthwith if ... there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response.").
To decide whether issues of material fact preclude summary judgment, evidence favorable to the non-moving party must be taken as true, every reasonable inference must be indulged in its favor, and any doubts resolved in its favor. Provident Life & Accident Ins. Co. v. Knott , 128 S.W.3d 211, 215 (Tex. 2003). The movant must conclusively establish its right to judgment as a matter of law. Charida v. Allstate Indem. Co. , 259 S.W.3d 870, 872 (Tex. App.-Houston [1st Dist.] 2008, no pet.) (citing MMP Ltd. v. Jones , 710 S.W.2d 59, 60 (Tex. 1986) ). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. City of Keller v. Wilson , 168 S.W.3d 802, 816 (Tex. 2005). If we determine that the trial court erred, we render the judgment that the trial court should have rendered. Dorsett , 164 S.W.3d at 661 ; FM Props. , 22 S.W.3d at 872.
To the extent we are required to interpret a statute, that aspect of our review is performed de novo. See TDIndustries, Inc. v. Rivera , 339 S.W.3d 749, 752 (Tex. App.-Houston [1st Dist.] 2011, no pet.). "In interpreting statutes, our primary purpose is to give effect to the legislature's intent by relying on the plain meaning of the text adopted by the legislature, unless a different meaning is supplied by statutory definition or is apparent from the context, or the plain meaning leads to absurd results." Better Bus. Bureau of Metro. Hou., Inc. v. John Moore Servs., Inc. , 441 S.W.3d 345, 353 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) (citing Tex. Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 635 (Tex. 2010) ). We presume that the legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen. TGS-NOPEC Geophysical Co. v. Combs , 340 S.W.3d 432, 439 (Tex. 2011). We apply the plain meaning of the words of the statute as written "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." Molinet v. Kimbrell , 356 S.W.3d 407, 411 (Tex. 2011).
Analysis of Language Used in the Small Bill
The parties agree that this case hinges upon whether the Small Bill quitclaimed to Sophronia Barrow's successors any interest that the State might have had to the bed of Lone Oak Bayou that fell within the Barrow Survey. To determine that issue, we examine the text of the statute, which provides:
*777 Sec. 1. All patents to and awards of lands lying across or partly across water courses or navigable streams and all patents and awards covering or including the beds or abandoned beds of water courses or navigable streams or parts thereof, which patents or awards have been issued and outstanding for a period of ten years from the date thereof and have not been cancelled or forfeited, are hereby confirmed and validated.
Sec. 2. The State of Texas hereby relinquishes, quit-claims and grants to patentees and awardees and their assignees all of the lands, and minerals therein contained, lying across, or partly across watercourses or navigable streams, which lands are included in surveys heretofore made , and to which lands patents or awards have been issued and outstanding for a period of ten years from the date thereof and have not been cancelled or forfeited, and the State of Texas hereby relinquishes, quit-claims and grants to patentees and awardees and their assignees all of the beds, and minerals therein contained, or water courses or navigable streams, and also all of the abandoned beds, and minerals therein contained, of water courses or navigable streams, which beds or abandoned beds or parts thereof are included in surveys heretofore made, and to which beds or abandoned beds, or parts thereof, patents or awards have been issued and outstanding for a period of ten years from the date thereof, and have not been cancelled or forfeited; provided that nothing in this Act contained shall impair the rights of the general public and the State in the waters of streams or the rights of riparian and appropriation owners in the waters of such streams, and provided further that with respect to lands sold by the State of Texas expressly reserving title to minerals in the State, such reservation shall not be affected by this Act; nor shall relinquish or quit-claim any number of acres of land in excess of the number of acres of land conveyed to said patentee or awardees in the original patents granted by the State, but the patentees or awardees and their assignees shall have the same rights, title and interest in the minerals in the beds or abandoned beds, or parts thereof, of such water courses or navigable streams, that they have in the uplands covered by the same patent or award; provided that this Act shall not in any way affect the State's title, right or interests in and to the sand and gravel, lying within the bed of any navigable stream within this State, as defined by Article 5302, Revised Statutes of 1925.
Sec. 3. All of the provisions of this Act shall apply equally to all Spanish and Mexican land grants and titles issued by the Spanish or Mexican Governments prior to the Texas Revolution of 1836, which have subsequently been recognized by the Republic of Texas, or by the State of Texas as valid.
TEX. REV. CIV. STAT. ANN. art. 5414a (West 2010) (emphasis added).
It is undisputed that the Barrow Survey was for 160 acres, and that part of that 160 acres necessarily includes a portion of the bed of Lone Oak Bayou. It is also undisputed that Lone Oak Bayou is both navigable and tidally influenced.
The Club contends that because Lone Oak bayou is a "watercourse or navigable stream" and was included in the acreage of Sophronia Barrow's patent, the Small Bill served as a quitclaim to any interest that the State might have had to the bed of the bayou within Sophronia Barrow's patent. The Land Commissioner, however, contends that Lone Oak Bayou is "tidally influenced," and that the Small Bill does not apply to land that is so described. Specifically, the Land Commissioner contends *778 that the term "watercourse" as used in the Small Bill means only "streams" and does not apply to "tidally influenced" waters, which remain coastal waters owned by the State. Essentially, the Land Commissioner contends that a "watercourse" is not a "watercourse" if it is influenced by the tides.
We reject the Land Commissioner's argument based on two reasons: (1) the plain language of the Small Bill, (2) the history and purpose of the Small Bill.
Plain Language
The Small Bill provides that it applies to "watercourses or navigable streams." It does not provide an exclusion for watercourses or navigable streams that are influenced by the tides, and we will not read such an exclusion into the statute. We must presume that the legislature chooses a statute's language with care and purposefully omits words not included in the statute. See TGS-NOPEC Geophysical , 340 S.W.3d at 439. "An exception to a statute will sometimes be implied where this is necessary to give effect to the legislative intent, but not otherwise." N. Common Sch. Dis. v. Live Oak Cty. Bd. of Sch. Trustees , 145 Tex. 251, 199 S.W.2d 764, 766 (1946).
The Land Commissioner has cited no authority, and we can find none, suggesting that a watercourse ceases to be a watercourse if it is influenced by tides. Indeed, the terms are not mutually exclusive. For example, many navigable streams are undoubtedly influenced by tides where they flow into bays on the Gulf of Mexico. However, the State does not argue that the Small Bill would not apply to a patent crossing such a navigable stream. We see no reason that a watercourse should be treated differently based on the plain language of the statute.
Texas law categorizes surface water into one of two general types: Diffuse surface water and water in a watercourse. Domel v. City of Georgetown , 6 S.W.3d 349, 354 (Tex. App.-Austin 1999, pet. denied). Diffuse surface water belongs to the owner of the land on which it gathers, so long as it remains on that land and prior to its passage into a natural watercourse. Id. In contrast, water in a watercourse is the property of the State, held in trust for the State. Id. Because the State claims ownership to both the bed and the water of the bayou, and there is no allegation that the bayou contains diffuse surface water, it must necessarily be water in a watercourse.
The Purpose of the Small Bill
In 1837, the State enacted a statute that prohibited surveys crossing navigable streams in Texas. See State v. Bradford , 121 Tex. 515, 50 S.W.2d 1065, 1068 (1932) (quoting since repealed article 5302 of 1925 Revised Statutes). Such surveys were improper because they purported to include the beds of the navigable streams, which were owned by the State. Id. at 1070. To cure the defects in the claims of landowners whose patents crossed navigable streams, the Legislature passed the Small Bill in 1929. Id. at 1071.
The purpose of the Small Bill was to make landowners who had received property through the State whole by making sure they received all that they had paid for. As noted by the Bradford court,
The state issued the patents and awards; the state received the purchase price for the lands patented and awarded; the state still retains the consideration paid therefor; and, in the exercise of its power, the Legislature decided to retain the consideration received for the land and confirm to the landowners that which they had already bought and paid for or for which the state held their outstanding obligations.
*779 Id. at 1077. Were we to read the Small Bill to exclude landowners whose patents contained "tidally affected" watercourses and navigable streams, those landowners would have been deprived of the consideration they gave in return and the purpose of the Small Bill would not have been served. Put simply, Sophronia Barrow received a patent for 160 acres, but if we interpret the Small Bill to exclude the bed of Lone Oak Bayou, she actually received much less property.
Thus, we conclude that the "plain language" of the Small Bill, as well as its historical purpose, supports the conclusion the term "watercourse or navigable stream" as used in the Small Bill does not exclude watercourses or navigable streams that are "tidally affected."
Application to Present Case
Having decided that the term "watercourse or navigable stream" in the Small Bill includes watercourses or navigable streams that are also "tidally affected," we turn to the issue of whether the Small Bill applies under the facts of this case.
Sophronia Barrow's 1872 patent from the State contained a description that, in violation of the prohibition against surveys across navigable waters, included a portion of navigable Lone Oak Bayou. Lone Oak Bayou is a watercourse because the surface waters in it are, undisputedly, public waters owned by the State. The patent is for 160 acres and includes and crosses the Lone Oak Bayou watercourse. The patent was never cancelled, forfeited, or rescinded and was made in 1872, which was more than 10 years prior to the passage of the Small Bill in 1929. Without application of the Small Bill, Sophronia Barrow would have received less than the 160 acres provided for in the patent.
Thus, we conclude that the language of the Small Bill meets the requirements for the conveyance of the land under State-owned water in this case. As such, the trial court did not err in concluding that the Small Bill applied in this case and granting the Club's motion for summary judgment and denying the Land Commissioner's motion for summary judgment.
APPROPRIATENESS OF REMEDY
Finally, we address the Land Commissioner's claim that the trial court erred by decreeing that "Plaintiff owns fee simple title to the portion of the bed of Lone Oak Bayou located in the Barrow Survey." The Land Commissioner contends that "[t]his blanket grant of title does not serve merely to reassert state control over Commissioner Bush-it adjudicates the strength of the Lone Oak Club's title, and thus Lone Oak Club's ownership against all potential claimants, including the State[,]" and that "[s]uch an adjudication of title implicates sovereign immunity and cannot stand."
We disagree with the Land Commissioner's assertion that the trial court's judgment adjudicates the Club's title against the State. As Lain makes clear, "[t]he judgment against the individuals, predicated as it is upon an incidental determination that title and right of possession is in the plaintiff, is not binding on the sovereign." 349 S.W.2d at 582 ; see also Porretto , 251 S.W.3d at 712 ("We note that any judgment against [the Land Commissioner and park board executive director in an ultra vires trespass-to-try-title action] does not bind the State.").
CONCLUSION
We affirm the trial court's judgment.

See Tex. Rev. Civ. Stat. Ann. art. 5414a (West 2010) ; Strayhorn v. Jones , 157 Tex. 136, 300 S.W.2d 623, 626 (1957) ("Generally speaking, the Small Bill confirmed and ratified title to the patentees, awardees and their assignees of patents which had been issued and outstanding for a period of ten years prior to March 3, 1929 ... and which patents and awards were to lands lying across or partly across water courses or navigable streams, and including the beds of such navigable streams.").

Regents Rule 10801 § 5.4.6 provided that "the Chandellor ... shall determine whether State or federal law restricts compliance with the [records] request."

See Tex. Nat. Res. Code Ann. §§ 31.001, 31.154, 31.001, 31,156, 51.291, 31.019 (West 2011) and Tex. Admin. Code § 7.2.

In contrast, the enabling authority in McRaven -Regents' Rule § 5.4.6-explicitly provides that the Chancellor "shall determine whether a Regent may review information that is protected by [the federal privacy law]."