**Opinion issued May 7, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-01046-CV

———————————

**THE UNIVERSITY OF TEXAS MD ANDERSON CANCER CENTER,**
**Appellant**

**V.**

**ROGER CONTRERAS, Appellee**

---

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-70606**

---

## O P I N I O N

The University of Texas MD Anderson Cancer Center filed a plea to the jurisdiction based on the doctrine of sovereign immunity. The trial court denied the plea, and MD Anderson appeals. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

We reverse and render a judgment dismissing the suit for lack of jurisdiction.

## BACKGROUND

Roger Contreras alleges that he was injured in a fall after undergoing knee-replacement surgery at MD Anderson. According to Contreras, he went to MD Anderson's barbershop with the assistance of a nurse, a walker, and a rolling IV pole. The nurse left him there so that he could get a haircut. When the nurse left the barbershop, she took Contreras's walker with her and told Contreras to use his IV pole "as a mobility assistance device when he needed to move around." While using the IV pole as instructed, it caused him to fall. Contreras asserts a single cause of action for negligence, alleging that MD Anderson negligently used the rolling IV pole as a walking aid, mobility device, or fall-prevention mechanism.

MD Anderson filed a plea to the jurisdiction, asserting that it has not waived its sovereign immunity from suit. The parties submitted evidence to the trial court. This evidence included Contreras's deposition, his medical expert's report, and the deposition of Contreras's treating surgeon.

Contreras testified that the nurse told him that he "could use the IV pole" to move about the barbershop and that he did not have any other means of doing so. When he later got up to go to the shampoo station after his haircut, he used his IV pole "as a walker." He took two steps and then his knee "weakened and buckled." At that point, the IV pole "just rolled," and he "fell down." When asked to clarify whether his knee buckled or the IV pole rolled first, Contreras stated that his "knee

2

would have done it and that's when" he tried to steady himself and couldn't. He agreed that his knee buckled first, causing him to fall to the ground, and that the IV pole did not cause his knee to buckle. So far as Contreras knew, the IV pole was not defective.

Will Moorhead, M.D., Contreras's medical expert, opined that an IV pole is not a proper walking aid. Indeed, he opined that a rolling IV pole "is contraindicated for use as an assisted ambulatory device." Moorhead concluded that MD Anderson should have provided Contreras with a proper ambulatory device, such as an actual walker instead of the rolling IV pole.

Contreras's treating surgeon, Bryan Moon, M.D., likewise testified that he did not consider a rolling IV pole to be an assistive device. While Moon sees patients use IV poles for this purpose, he agreed that an IV pole is not what he has in mind when he orders that his patients receive an assistive device. As to Contreras, Moon testified that he "would anticipate that he would need more than" a rolling IV pole for assistance in walking. Moon also said that he was surprised that Contreras did not have a walker with him in the barbershop because a patient who has had knee surgery typically would have one.

The trial court denied MD Anderson's jurisdictional plea.

## DISCUSSION

It is undisputed that MD Anderson is a state entity shielded from suit by sovereign immunity unless its immunity is waived by the Tort Claims Act.

Contreras maintains that MD Anderson's negligent use of a rolling IV pole as a mobility-assistance device caused his injuries. He argues that a nurse took his walker away and told him to use the IV pole to get around. Contreras contends that he "fell when the use of the rolling IV-pole proved to be a negligent use of an inadequate mobility device." He argues that this brings him within the Act's waiver of immunity for injuries caused by the state's use of tangible personal property. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2).

MD Anderson contends that Contreras's negligence claim does not satisfy section 101.021(2)'s use requirement for two reasons. First, MD Anderson argues that it merely furnished Contreras with the IV pole, which he, rather than a hospital employee, then used. Second, it argues that Contreras's true complaint is that MD Anderson should have given him a different mobility-assistance device, namely his walker, and thus turns on the non-use of tangible personal property instead of its use.

### A. Standard of review

An assertion of sovereign immunity is jurisdictional in nature. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). If the state or certain governmental units have not waived their sovereign immunity, then the trial court lacks subject-matter

4

jurisdiction to hear a suit for damages against them. *Shamrock Psychiatric Clinic v. Tex. Dep't of Health & Human Servs.*, 540 S.W.3d 553, 559 (Tex. 2018) (per curiam). Jurisdictional challenges present a question of law, which we review de novo. *Id.*; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In a de novo review, we give no deference to the trial court's jurisdictional ruling. *McFadin v. Broadway Coffeehouse*, 539 S.W.3d 278, 282 (Tex. 2018).

Because sovereign immunity implicates subject-matter jurisdiction, it can be raised for the first time on appeal. *State ex rel. Best v. Harper*, 562 S.W.3d 1, 15 (Tex. 2018); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94–95 (Tex. 2012). Like other issues implicating subject-matter jurisdiction, sovereign immunity cannot be waived. *See Bush v. Lone Oak Club*, 546 S.W.3d 766, 772 (Tex. App.—Houston [1st Dist.] 2018, pet. pending). We thus must consider the sovereign-immunity arguments made by a governmental unit on appeal regardless of whether it made these arguments or how it framed them in the trial court. *See id.*

In assessing whether subject-matter jurisdiction exists, we first focus on whether the plaintiff's petition, construed in the plaintiff's favor, pleads facts that affirmatively show that subject-matter jurisdiction exists. *Hearts Bluff Game Ranch v. State*, 381 S.W.3d 468, 476 (Tex. 2012); *Holland*, 221 S.W.3d at 642–43. Sometimes, however, we also must consider evidence as to jurisdictional facts. *Hearts Bluff*, 381 S.W.3d at 476. If a fact issue exists as to whether subject-matter

jurisdiction exists and the issue is inextricably entwined with the merits, the resolution of this issue is for the factfinder. *Miranda*, 133 S.W.3d at 226–28. But evidence also may undermine the jurisdictional allegations of the plaintiff's petition. *Hearts Bluff*, 381 S.W.3d at 476. If the undisputed evidence negates jurisdiction, then the plaintiff's suit must be dismissed. *See Miranda*, 133 S.W.3d at 234.

### B.    Applicable law

The Tort Claims Act waives sovereign immunity in three distinct areas, including with respect to injuries "caused by a condition or use of tangible personal or real property." TEX. CIV. PRAC. & REM. CODE § 101.021(2); *see Miranda*, 133 S.W.3d at 225. This provision has been a source of judicial concern almost from the moment of its enactment. *See, e.g.*, *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 589–93 (Tex. 2001) (Hecht, J., concurring) (pleading in vain with Legislature to amend provision to clarify its scope). As a result, the Supreme Court of Texas has rendered numerous decisions interpreting section 101.021(2).

Subject to a narrow exception, a governmental unit does not use personal property merely by providing, furnishing, or allowing another to use it. *Harris Cty. v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018). So, for example, when a patient, rather than the government, uses the property, section 101.021(2) is not satisfied. *Dallas Cty. v. Posey*, 290 S.W.3d 869, 871 (Tex. 2009) (per curiam). The exception to this general rule applies to situations in which the government provides the plaintiff with

personal property that lacks an integral safety component and the safety component's absence causes the plaintiff's injury. *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 247 (Tex. 2004). This exception, however, applies solely when the component is entirely missing; the failure to provide a more effective safety feature does not trigger the exception. *Tex. A&M Univ. v. Bishop*, 156 S.W.3d 580, 584 (Tex. 2005); *Tex. Dep't of Family & Protective Servs. v. Atwood*, 176 S.W.3d 522, 531 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Otherwise, for purposes of section 101.021(2), a governmental unit uses tangible personal property if and only if the governmental unit itself is the user of the property. *See Annab*, 547 S.W.3d at 613; *Black*, 392 S.W.3d at 97; *City of Pasadena v. Thomas*, 263 S.W.3d 43, 45 (Tex. App.—Houston [1st Dist.] 2006, no pet.). An allegation that the government enabled, authorized, or approved another's use of the property is not enough. *Annab*, 547 S.W.3d at 613. Nor does a claim for negligent supervision of a governmental employee or agent qualify as the use of tangible personal property. *Bishop*, 156 S.W.3d at 583; *Thomas*, 263 S.W.3d at 47.

By definition, non-use is not use. *Annab*, 547 S.W.3d at 614. Thus, for example, an allegation that the government failed to use an alternative or different type of tangible personal property does not satisfy section 101.021(2)'s use requirement. *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 372–73 (Tex.

7

2012); *Posey*, 290 S.W.3d at 871–72. In the particular context of state medical facilities, the Court has observed that:

> There cannot be waiver of sovereign immunity in every case in which medical treatment is provided by a public facility. Doctors in state medical facilities use some form of tangible personal property nearly every time they treat a patient. Because of this fact, a patient suing for negligence could always complain that a different form of treatment than the one employed would have been more effective and still claim waiver under the Act. If such a complaint were enough to constitute the use of tangible personal property under the Act, the doctrine of sovereign immunity would be rendered a nullity.

*Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585–86 (Tex. 1996).

In addition, the governmental unit must not only use the property, the property also must have actually caused the plaintiff's injury for section 101.021(2) to apply. *Miller*, 51 S.W.3d at 588. If the use of the property merely furnishes a condition that makes the injury possible, rather than causing it, then the government's sovereign immunity remains intact. *Id.*; *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998); *Univ. of Tex. Med. Branch at Galveston v. Tatum*, 389 S.W.3d 457, 461 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

### C.    Analysis

As an initial matter, Contreras contends that we must affirm the trial court's denial of MD Anderson's jurisdictional plea because its "appeal is based on a fatally-flawed plea to the jurisdiction." We reject this contention.

Whether MD Anderson is entitled to dismissal based on sovereign immunity turns on the jurisdictional allegations in Contreras's petition and the relevant evidence in the record. *See Hearts Bluff*, 381 S.W.3d at 476. Because sovereign immunity implicates subject-matter jurisdiction, the doctrine is not subject to waiver. *See Bush*, 546 S.W.3d at 772. Flaws in MD Anderson's plea are thus immaterial, unless they affect its substantive arguments, to which we now turn.

Contreras doesn't allege that his IV pole was defective. He contends he fell because MD Anderson "employees negligently used a rolling IV pole as an inadequate walking assistance device" to help him move about.

But neither the nurse who took Contreras to the barbershop nor any other MD Anderson employee used the IV pole in the sense required by section 101.021(2). The Supreme Court has held that a governmental medical facility does not waive its sovereign immunity by providing, furnishing, or allowing a patient to use tangible personal property. For example, in *Cowan*, a state hospital allowed a suicidal patient to keep his suspenders and walker, which the patient then used to kill himself. 128 S.W.3d at 245. The Court held that section 101.021(2)'s waiver of sovereign immunity did not apply because it "waives immunity for a use of personal property only when the governmental unit is itself the user." *Id.* at 245–46; *see also Posey*, 290 S.W.3d at 871 ("In *Cowan*, we held that the government did not waive immunity by providing suspenders and a walker to a patient who later used them to hang

9

himself because it was the patient—not the government—who used the property.").

Similarly, in *Black*, a state hospital either provided a psychiatric patient with access to a plastic bag or failed to prohibit him from accessing it, and the patient used it to kill himself. 392 S.W.3d at 91, 98. Relying on *Cowan*, the Court once again held that a state hospital does not use property within the meaning of section 101.021(2) "by merely providing, furnishing, or allowing access to it." *Id.* at 98.

There is a narrow exception for scenarios in which a governmental unit furnishes the plaintiff with personal property that lacks an integral safety component and the safety component's absence causes the plaintiff's injury. *Cowan*, 128 S.W.3d at 246–47; *see Clark*, 923 S.W.2d at 585 ("For example, if a hospital provided a patient with a bed lacking bed rails and the lack of this protective equipment led to the patient's injury, the Act's waiver provisions would be implicated."). But Contreras does not allege that his IV pole would have been safe for use as a mobility-assistance device if only it had included a safety component that it lacked. He instead claims that a rolling IV pole is inadequate for use as a mobility-assistance device and that MD Anderson was negligent in allowing him to use it for this purpose. Contreras's expert, for example, opined that a rolling IV pole is "contraindicated for use as an assisted ambulatory device." "Contraindicate" is a term of art in medicine meaning that a particular technique or treatment "should not

be used in the case in question." *Contraindicate*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010).

A corollary to Contreras's position that a rolling IV pole was contraindicated for use as a mobility-assistance device is the proposition that MD Anderson should have furnished him with some other device, like an actual walker, to help him move about the barbershop. This proposition, however, amounts to an allegation of failure to use tangible personal property or non-use, rather than use. *See Friend*, 370 S.W.3d at 372–73; *Posey*, 290 S.W.3d at 871–72. An allegation that MD Anderson's employees should have given him a different device does not come within section 101.021(2)'s waiver of immunity for use of property. *See Annab*, 547 S.W.3d at 614.

Contreras contends that *Cowan* and other Supreme Court decisions are distinguishable because MD Anderson did not merely furnish him with an IV pole as a mobility-assistance device. The nurse's instruction that he should use the pole for this very purpose, he argues, sets his case apart from decisions like *Cowan*. In support of this argument, Contreras relies on *University of Texas MD Anderson Cancer Center v. Jones*, in which our sister court held that the "prescribing and dispensing" of a prescription drug to a patient who attempted suicide after taking the medicine constituted use for purposes of section 101.021(2). 485 S.W.3d 145, 151 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Contreras posits that he is like

11

the plaintiff in *Jones*, inasmuch as both he and that plaintiff were directed to use property and suffered injury as a result.

We disagree with Contreras's contention that *Jones* provides a persuasive distinction. Unlike our sister court, this court has rejected the notion that state doctors use tangible personal property when they write a prescription. *Ruggeri v. Baylor Coll. of Med.*, No. 01-13-00353-CV, 2014 WL 4345165, at *3–4 (Tex. App.—Houston [1st Dist.] Aug. 29, 2014, no pet.) (mem. op.). Our sister court distinguished *Ruggeri* on the basis that another, non-state facility actually dispensed the medicine to the patient in that case. *See Jones*, 485 S.W.3d at 150 n.6. In other words, the *Jones* court held that when a state medical facility both prescribes and dispenses a medication, it has used that medicine for purposes of section 101.021(2) when the plaintiff alleges she was injured as a result of using it. *See id.* at 150–51.

We cannot agree with the *Jones* court's conclusion that the act of dispensing medicine makes a meaningful difference or that prescribing in combination with dispensing constitutes use of personal property for purposes of section 101.021(2). After *Jones* was decided, the Supreme Court handed down its decision in *Annab*. In *Annab*, the Court held that an allegation that a governmental unit "enabled, authorized, or approved" another's use of personal property does not amount to an allegation that the governmental unit itself used that property. 547 S.W.3d at 613. Whether considered on their own or in combination, a doctor's prescription and a

12

pharmacist's subsequent dispensing of the drug accompanied by instructions to take it as prescribed do no more than enable, authorize, and approve a drug for the patient's use. Under *Annab*, enabling, authorizing, and approving another's use does not constitute use by the government for purposes of section 101.021(2). *See id.*

The nurse's instruction as to the use of the rolling IV pole is the same. She enabled, authorized, and approved Contreras's use of the pole in the same way that a prescribing physician enables, authorizes, and approves the use of a prescription medicine or medical device. Contreras complains that she should have left his walker in the barbershop or else provided him with something other than a rolling IV pole. The Supreme Court has held that this complaint—the failure to provide an alternative type of medical treatment—is not a use of tangible personal property. *See Clark*, 923 S.W.2d at 585 (failure to prescribe and administer injectable drug instead of its oral form was allegation of non-use of alternative medical treatment and therefore did not satisfy section 101.021(2)'s use requirement).

Construing the facts in Contreras's favor, as we must, we hold that MD Anderson did not waive its sovereign immunity under the circumstances of this case. The trial court therefore erred in denying MD Anderson's jurisdictional plea.

## CONCLUSION

We reverse the trial court's order denying MD Anderson's plea to the jurisdiction and render a judgment dismissing the suit for lack of jurisdiction.


Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.