**Opinion issued July 16, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00014-CV**

———————————

**UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON,**
**Appellant**

**V.**

**PATRICIA MARIE CARROLL, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-32729**

---

**MEMORANDUM OPINION**

Appellant University of Texas Health Science Center at Houston (UTHSCH) appeals from the trial court's order denying its plea to the jurisdiction in appellee Patricia Marie Carroll's suit asserting claims for race and age discrimination and

retaliation under the Texas Commission on Human Rights Act (TCHRA).[1] In five issues, UTHSCH contends that (1) the trial court lacked subject matter jurisdiction over Carroll's claims related to 2020 promotions because her claims go beyond the scope of her Equal Employment Opportunity Commission charge; (2) most of Carroll's claims fail because she did not timely exhaust her administrative remedies; (3) Carroll's 2021 failure-to-promote race and age discrimination claims fail because she did not assert a valid claim falling within the TCHRA's limited waiver of UTHSCH's sovereign immunity; (4) Carroll's 2021 discrimination claims fail because she failed to rebut UTHSCH's legitimate, nondiscriminatory reason for not promoting her; and (5) Carroll's various retaliation claims fail because she failed to set forth one or more of the *prima facie* elements of her claims and otherwise failed to rebut UTHSCH's non-retaliatory reason for not promoting her. We reverse and render.

**Background**

In 2016, Carroll was employed by Change Healthcare as an Account Receivable Specialist. Change Healthcare, a contractor, handled some of UTHSCH's accounts receivable.

---

[1] TEX. LAB. CODE § 21.051.

UTHSCH later decided to begin handling most of its accounts receivable in-house rather than contracting them out to Change Healthcare. It offered employment positions to Change Healthcare employees who had worked on UTHSCH's accounts receivable commensurate with their positions at Change Healthcare. UTHSCH hired Change Healthcare employees in two phases. It hired Carroll, then sixty years old, as a Patient Account Representative II during the first phase in September 2016. Carroll was later promoted to Accounts Receivable Operations Manager in 2017. In September 2020, UTHSCH hired two manager-level Change Healthcare employees, Maria Gonzalez and Jessica Easterwood, as part of the second phase and placed them into director roles.

In conjunction with the transition of Change Healthcare employees and related hiring, UTHSCH was preparing to transition its accounts receivable and billing to Epic Systems, a new software program. UTHSCH posted job openings for two Director level positions: Director, Charge Capture and Coding, and Director of Centralized A/R Operations. The positions were open to internal and external candidates. In anticipation of the transition to Epic, Kristi Bradley, UTHSCH's Vice-President and Chief Revenue Cycle Officer, instructed the executive recruiter to seek candidates with current, strong Epic experience.

3

Carroll did not apply for the position of Director, Charge Capture and Coding. In May 2020, UTHSCH hired Magdalena Kenworthy, who had recent experience with Epic.

In October 2020, UTHSCH sought applicants for the second position, Director of Centralized A/R Operations. The job posting stated, "[s]trong, current Epic Systems experience is highly preferred." Carroll applied for this position.

UTHSCH employs a three-step hiring process for administrative and professional positions. First, an executive recruiter screens and interviews applicants and selects candidates for consideration by the Search Committee. Second, the Search Committee reviews the applicant materials and determines which applicants it will interview. To qualify for a promotion, an applicant must have received a "meets expectation" rating on her most recent evaluation. Third, the Search Committee then selects and recommends its top candidates for a final review and interview by the Hiring Manager, Associate Vice-President Brenda Lehman. Aware that Carroll had previously filed internal complaints regarding Lehman, Bradley selected Search Committee members with no knowledge of Carroll's internal complaints.

The executive recruiter recommended nine external candidates and one internal candidate—Carroll—to the Search Committee for review and consideration for the Director of Centralized A/R Operations position. The Search Committee

4

considered it important that a candidate have strong, current experience with Epic and its implementation, and it deemed certification in Epic "highly desirable." Carroll did not have prior Epic experience or Epic certification.[2]

The Search Committee reviewed Carroll's application but decided not to interview her for the position. It forwarded five applicants to Lehman for consideration. Moleshay Williams, an African American woman over the age of forty, was hired for the Director position. Williams had Epic certification, recent experience with Epic and its implementation, and was a presenter for Epic at its 2019 annual conference. She began her employment at UTHSCH on April 5, 2021. UTHSCH transitioned to Epic in May 2021.

On August 18, 2021, Carroll jointly filed a charge of discrimination with the Texas Workforce Commission–Civil Rights Division (TWCCRD) and the Equal Employment Opportunity Commission (EEOC) alleging race and age discrimination and retaliation. Carroll listed the earliest date of discrimination as October 16, 2020 and the latest date as April 5, 2021. She also checked the box labeled "continuing action" on her charge.

---

[2]    While Carroll did not have an Epic certification or any on-the-job experience with Epic, her resumé states that she was "on the Curriculum Writing EPIC team and help[ed] write training materials for the EPIC Implementation team," and her cover letter for the Director, Centralized Operations position stated that she was "on the Curriculum Writing team for the EPIC Implementation Project."

On June 1, 2022, Carroll filed suit against UTHSCH asserting claims for race and age discrimination and retaliation under the TCHRA. Under "Factual Background," Carroll alleged:

- Plaintiff is 65 years old, a Black (African American) woman, with over 40 years of experience in Managed Care Operations, Regulatory Compliance, Claims Processing, and Revenue Cycle Management.

- Plaintiff asserts race and age discrimination in violation of her rights under Chapter 21 of the Texas Labor Code, and retaliation as a result of her filing good faith compliance complaints and being viewed as a whistleblower.

- The most recent incident of age and race discrimination occurred on April 5, 2021, when Plaintiff was denied a promotion to Director, Centralized Accounts Receivable (AR) Operations. Lesser qualified candidates, who are not black or older, received promotions.

- Plaintiff was denied a promotion in retaliation for engaging in protected activity (good faith whistleblowing) that alerted UTHSCH/UT Physicians (UTP) of billing and financial operations at UTHSCH/UTP that appeared non-compliant. Plaintiff was subjected to harassment and a hostile work environment to try to make her retire or constructively discharge her.

- In 2018, Plaintiff applied for a Manager, AR Operations position. Plaintiff's boss, Associate Vice President (AVP) Brenda Lehman, advised that she had selected a Caucasian employee, Tonia Quackenbush, who did not have a degree and limited AR experience. At the time, Plaintiff had almost 40 years of experience, including previous manager and director roles and two bachelor's degrees. Brenda Lehman told Plaintiff that Tonia was the "best fit" for the role. Plaintiff alerted HR to the disparity and Plaintiff was promoted into the role.

- In retaliation, Plaintiff was paid only $500 more per year than a white employee who was promoted to a newly created manager's position several weeks later.

- Plaintiff's boss, Associate Vice President (AVP) Brenda Lehman, managed the Change [Healthcare] contract, which provided contract labor in the AR

department. Two director positions were created for Maria Gonzalez and Jessica Easterwood, who are outside candidates/former contractors. The positions were not posted or announced in the AR department for internal candidates to apply, and neither is Black.

- Plaintiff was not made aware of the two Director positions in her department, which were given to two former Change Healthcare (Change HC) contractors, who were underperforming in their roles, yet promoted into UTHSCH/UTP director roles over a more qualified Black and older current employee.

- On September 18, 2020, all employee evaluations were due, but Plaintiff did not receive her evaluation from Lehman. Plaintiff knew that she needed her evaluation to apply if a new Director position opened.

- Plaintiff filed a complaint in October 2020 due to the cruelty of being assigned to a "deplorable" department, with no available resources. Plaintiff was also humiliated as she watched others receive promotions while she was continuously denied the opportunity because of her race and age.

- On November 8, 2020, Plaintiff discovered that Lehman had an electronic folder of case departmental policies and procedures which could have helped Plaintiff with the transition of the "deplorable" department. Lehman suppressed information in a manner that contributed to creating a hostile work environment and in hopes that Plaintiff retired or quit before the director position was filled.

- When the new Director position was announced at a manager's meeting, Lehman stated that she wanted someone like "Maggie" for the role. Maggie Kenworthy fit Lehman's open preference for younger, non-Black candidates in senior leadership roles. Plaintiff filed another grievance.

- Lehman was the hiring manager for a new Director position. She refused to document Plaintiff's stellar performance, which would have assisted Plaintiff in securing the position. Plaintiff appealed to Human Resources (HR) to have her evaluation completed, including filing a retaliation and discrimination grievance, but HR never made Lehman produce the evaluation.

- On April 5, 2021, Plaintiff was passed over for the third Director of AR Operations position. Moleshay (Shay) Williams, a significantly younger, less experienced candidate who happens to be Black, assumed the role.

7

Under "Causes of Action," Carroll alleged that, despite her qualifications, UTHSCH failed to promote her to three positions—AR Operations, AR Centralized Operations, and Director—based on her race and age and selected individuals outside of her protected classes, African American and over the age of 40. Carroll further asserted that UTHSCH retaliated against her by singling her out for excessive reprimands, continuously denying her a performance review, and denying her career advancement after she engaged in protected activity by filing an internal complaint of discrimination and harassment with UTHSCH and a joint charge of discrimination with the EEOC and TWCCRD.

UTHSCH answered asserting a general denial and affirmative defenses.

On September 1, 2022, UTHSCH filed a plea to the jurisdiction seeking dismissal of Carroll's race and age discrimination and retaliation claims because they were time barred or failed to state a claim within the limited waiver of sovereign immunity provided by the TCHRA. Specifically, it argued that two of Carroll's three failure-to-promote claims should be dismissed because the promotional opportunities occurred more than 180 days before she filed her charge of discrimination and were therefore time barred, and her charge did not encompass the two alleged denials of promotion. As for Carroll's 2021 failure-to-promote claim, UTHSCH argued that (1) Carroll's prima facie race and age discrimination claims failed because it selected another African American woman over the age of forty for

8

the position; (2) her discrimination claims failed because UTHSCH had legitimate, nondiscriminatory reasons for not promoting Carroll; and (3) Carroll could not show that UTHSCH's proffered reasons were pretextual. UTHSCH argued that Carroll's retaliation claims were also jurisdictionally barred because (1) Carroll did not engage in protected activity prior to the complained-of actions; (2) the complained-of conduct did not constitute adverse employment actions; (3) Carroll could not establish a causal link between her protected activity and UTHSCH's failure to promote her; and (4) Carroll could not overcome UTHSCH's legitimate, nondiscriminatory reasons for not promoting her. UTHSCH attached to its plea the sworn affidavit of Kristi Bradley, Vice-President and Chief Revenue Cycle Officer, which included as exhibits the job posting for the Director of Centralized A/R Operations position, Carroll's charge of discrimination, Williams's job application, and the sworn affidavit of Kelly Johnson, UTHSCH's Director of Vendor Management & Business Operations who served as Chair of the Selection Committee.

Carroll responded to UTHSCH's plea arguing that her claims were not time barred because UTHSCH's actions constituted a continuing violation amounting to evidence of an ongoing discriminatory practice or policy. She further asserted that UTHSCH's reliance on the prima facie case at this stage of the litigation was misplaced, and that she alleged sufficient facts affirmatively demonstrating the trial

9

court's jurisdiction over her discrimination and retaliation claims under the TCHRA. She also argued that she had alleged a case of disparate treatment as well as disparate impact involving race and age discrimination.

In its reply, UTHSCH argued that Carroll failed to include her pre-2021 claims in her charge of discrimination and did not timely file the charge within 180 days of the alleged discriminatory and retaliatory acts and, therefore, her pre-2021 claims were barred by sovereign immunity. It further argued that the continuing violations doctrine could not salvage Carroll's time-barred claims, and that the doctrine does not apply to discrimination and retaliation claims premised on discrete acts such as those alleged by Carroll. UTHSCH argued that Carroll's response to its plea erroneously relied on case law discussing the standard of review applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) rather than the standard of review state courts apply to determine whether a claim against a state entity falls within TCHRA's limited waiver of sovereign immunity. UTHSCH asserted that Carroll failed to raise a fact issue regarding the trial court's jurisdiction over her 2021 failure-to-promote race discrimination claim because she did not establish a prima facie case; UTHSCH presented a legitimate, non-discriminatory reason for not promoting her; and Carroll failed to show that its proffered reason was pretextual. UTHSCH argued that Carroll's disparate impact claim was

jurisdictionally barred because she did not allege such a claim in her charge and, even if she had, her petition failed to allege a viable disparate impact claim.

Following a hearing, the trial court denied UTHSCH's plea to the jurisdiction on December 19, 2022. This interlocutory appeal followed.

**Standard of Review**

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages."[3] *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing *Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 374 (Tex. 2006)). "[S]overeign immunity 'extends to various divisions of state government, including agencies, boards, hospitals, and universities.'" *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323–24 (Tex. 2006) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)). UTHSCH is part of the University of Texas System. *See* TEX. EDUC. CODE § 65.02(a)(9).

---

[3] Sovereign immunity protects the State, state agencies, and their officers, while governmental immunity protects subdivisions of the State, including municipalities and school districts. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). However, both types of immunity afford the same degree of protection and both levels of government are subject to the Texas Tort Claims Act. TEX. CIV. PRAC. & REM. CODE § 101.001(3); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008).

"We interpret statutory waivers of sovereign immunity narrowly, as the Texas Legislature's intent to waive immunity must be clear and unambiguous." *See Garcia*, 253 S.W.3d at 655; TEX. GOV'T CODE § 311.034. "Without an express waiver of sovereign immunity or governmental immunity, courts do not have subject-matter jurisdiction over suits against the State or its political subdivisions." *Prater v. Owens*, 667 S.W.3d 363, 371 (Tex. App.—Houston [1st Dist.] 2022, no pet.). UTHSCH's plea to the jurisdiction is based on sovereign immunity.

"We review de novo a trial court's ruling on a jurisdictional plea." *Univ. of Tex. MD Anderson Cancer Ctr. v. Simpson*, No. 01-20-00679-CV, 2021 WL 3083104, at *3 (Tex. App.—Houston [1st Dist.] July 22, 2021, no pet.) (mem. op.) (citing *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist.*, 212 S.W.3d at 323; *City of Hous. v. Vallejo*, 371 S.W.3d 499, 501 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)). "A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction." *Id.* (citing *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Villarreal v. Harris Cnty.*, 226 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2006, no pet.)); *see Sullivan v. Univ. of Tex. Health Sci. Ctr. at Hous. Dental Branch*, No. 01-08-00327-CV, 2008 WL 5179023, at *1 (Tex. App.—Houston [1st Dist.] Dec. 11, 2008, pet. denied) (mem. op.). "A defendant may use a plea to the jurisdiction to challenge whether the plaintiff has met [the] burden of

alleging jurisdictional facts or to challenge the existence of jurisdictional facts." *Simpson*, 2021 WL 3083104, at *3 (citing *Miranda*, 133 S.W.3d at 226–27).

When "the plea challenges the existence of jurisdictional facts, we must move beyond the pleadings and consider evidence when necessary to resolve the jurisdictional issues, even if the evidence implicates both subject-matter jurisdiction and the merits of a claim." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018). "In reviewing such a plea, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Simpson*, 2021 WL 3083104, at *3 (citing *Alamo Heights*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 228). "However, we cannot disregard evidence necessary to show context or evidence and inferences unfavorable to the nonmovant if reasonable jurors could not do so." *Id.* (citing *Alamo Heights*, 544 S.W.3d at 771). "This standard mirrors our summary-judgment standard under Texas Rule of Civil Procedure 166a(c) and places the burden on the governmental unit, as the movant, to meet the standard of proof to support its contention that the trial court lacks subject-matter jurisdiction." *Id.* (citing *Miranda*, 133 S.W.3d at 228; *Garcia*, 372 S.W.3d 629 at 635). It also "allows the state in a timely manner to extricate itself from litigation if it is truly immune." *Miranda*, 133 S.W.3d at 228 ("[T]he purpose of a plea to the jurisdiction [] is to defeat a cause of

action for which the state has not waived sovereign immunity (usually before the state has incurred the full costs of litigation).").

"If a fact issue exists as to whether subject-matter jurisdiction exists and the issue is inextricably entwined with the merits, the resolution of this issue is for the fact-finder." *Univ. of Tex. MD Anderson Cancer Ctr. v. Contreras*, 576 S.W.3d 439, 443 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (citing *Miranda*, 133 S.W.3d at 226–28). "But evidence also may undermine the jurisdictional allegations of the plaintiff's petition." *Id.* (citing *Hearts Bluff Game Ranch v. State*, 381 S.W.3d 468, 476 (Tex. 2012)). "If the undisputed evidence negates jurisdiction, then the plaintiff's suit must be dismissed." *Id.* (citing *Miranda*, 133 S.W.3d at 234).

## Discussion

In five issues, UTHSCH contends that the trial court lacked subject matter jurisdiction over Carroll's claims of race and age discrimination and retaliation asserted against it under the TCHRA. We consider each in turn below.

### A. Governing Law

Under the TCHRA, an employer commits an unlawful employment practice if, because of an employee's race or age, the employer "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." TEX. LABOR CODE § 21.051(1); *see Anderson v. Hous. Cmty. Coll.*

14

*Sys.*, 458 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2015, no pet.). One of the purposes of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964." TEX. LABOR CODE § 21.001(1). "[W]hen analyzing a claim brought under the TCHRA, we look not only to state cases but also to analogous federal statutes and the cases interpreting those statutes." *Hartranft v. UT Health Sci. Ctr.-Hous.*, No. 01-16-01014-CV, 2018 WL 3117830, at *11 (Tex. App.—Houston [1st Dist.] June 26, 2018, no pet.) (mem. op.) (citing *Garcia*, 372 S.W.3d at 634).

"Discrimination and retaliation cases under the TCHRA can be established with either direct or circumstantial evidence." *Id.* "In the absence of direct evidence of discrimination, the employee must make a prima facie case of discrimination under the *McDonnell-Douglas* burden-shifting analysis." *Anderson*, 458 S.W.3d at 643. "The three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)[,] enables an employee to establish discrimination with circumstantial evidence." *Hartranft*, 2018 WL 3117830, at *11. "If the employee can establish a prima facie case of discrimination, a rebuttable presumption of discrimination arises, which can alone sustain a discrimination claim." *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). "But the employer can defeat this presumption merely by producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action." *Id.* (citing

15

*McDonnell Douglas Corp.*, 411 U.S. at 802). "Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination." *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802); *see Democratic Schs. Rsch., Inc. v. Rock*, 608 S.W.3d 290, 308 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("If the employer rebuts the presumption of discrimination, the burden of production shifts back to the employee to show that the employer's stated reason was a pretext for discrimination."). For that reason, "when jurisdictional evidence negates the prima facie case or . . . rebuts the presumption it affords, some evidence raising a fact issue on retaliatory intent is required to survive a jurisdictional plea." *Alamo Heights*, 544 S.W.3d at 764. "In both direct-and circumstantial-evidence cases, the burden of persuasion remains at all times with the employee." *Hartranft*, 2018 WL 3117830, at *11 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

## B. Scope of Carroll's Charge

In its first issue, UTHSCH contends that the trial court lacked subject matter jurisdiction over Carroll's 2020 failure-to-promote claims because those claims go beyond the scope of her EEOC charge.

In her petition, Carroll alleged that, in September 2020, UTHSCH created two director positions in her department which were given to two former Change

16

Healthcare contractors, Maria Gonzalez and Jessica Easterwood, neither of whom is Black, over Carroll, a more qualified Black and older employee. She further alleged that, in April 2021, she was denied a promotion to a third position, Director of Centralized A/R Operations, and that Moleshay Williams, a significantly younger, less experienced candidate who is Black, assumed the role. Carroll alleged that UTHSCH discriminated against her based on race and age by denying her promotions to these three positions. In its plea and on appeal, UTHSCH argues that Carroll's September 2020 failure-to-promote claims should be dismissed because her discrimination charge did not encompass the two alleged denials of promotion. It concedes, however, that Carroll's April 2021 failure-to-promote claim falls within the scope of her charge.

"It is well settled that the scope of Title VII and TCHRA litigation is limited to claims that were included in the administrative charge of discrimination and to factually related claims that could reasonably be expected to grow out of the agency's investigation of the claims stated in the charge." *Cuadra v. Declaration Title Co.*, 682 S.W.3d 628, 634 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (mem. op.) (quoting *Lopez v. Tex. State Univ.*, 368 S.W.3d 695, 701 (Tex. App.—Austin 2012, pet. denied) (citing *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006); *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 810 (Tex. App.—Austin 2009, no pet.); *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App.—

17

Houston [14th Dist.] 1999, no pet.)); *see Santi v. Univ. of Tex. Health Sci. Ctr.*, 312 S.W.3d 800, 805 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("A lawsuit under the [TCHRA] is limited to claims made in the charge or complaint filed with the EEOC or [TWC] and factually related claims that can reasonably be expected to grow out of the commission's investigation.") (citing *Bartosh v. Sam Hous. State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied)). Courts construe the administrative complaint liberally and "look slightly beyond its four corners, to its substance rather than its label" to determine the scope of the administrative investigation "which can reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 788–89 & n.9; *City of Sugar Land v. Kaplan*, 449 S.W.3d 577, 581–82 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "A vague or circumscribed EEOC charge cannot satisfy the exhaustion requirement for claims it does not fairly embrace." *Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997). "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Id.* (*citing Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir. 1989)). While every detail of the complaint need not be presaged in the EEOC filing, the substance of the claim still must fall "within the scope of 'the

administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Id.* (citing *Sw. Convenience Stores, LLC v. Mora*, 560 S.W.3d 392, 401–02 (Tex. App.—El Paso 2018, no pet.). "'The crucial element of a charge of discrimination is the factual statement contained' in the administrative complaint." *Santi*, 312 S.W.3d at 805 (quoting *Bartosh*, 259 S.W.3d at 321). Courts will not construe the charge to include facts that were initially omitted. *Sw. Convenience Stores*, 560 S.W.3d at 401; *Cnty. of Travis ex rel. Hamilton v. Manion*, No. 03-11-00533-CV, 2012 WL 1839399, at *4 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.) (citing *Harris v. David McDavid Honda*, 213 F. App'x 258, 261 (5th Cir. 2006) (per curiam) (not designated for publication)).

In her charge of discrimination, in the space entitled "Discrimination Based On (Check appropriate boxes)," Carroll checked the boxes labeled "Race," "Age," "Retaliation," and "Other," and included the typed notation "I am 65 years old and Black (African American)." She identified the earliest date of discrimination as October 16, 2020 and the latest date as April 5, 2021. In the narrative portion of her charge, Carroll stated that Gonzalez and Easterwood, two non-Black former Change Healthcare employees who were retained by UTHSCH and placed in newly created director-level positions, were responsible for the "deplorable conditions" of the Case Department that Carroll took over in September 2020. Carroll stated that she was "denied a promotion as an exceptional employee but required to 'clean[]up their

19

mess' at a manager's rate of pay." Carroll stated that when the Director, AR Centralized Operations position was announced in October 2020, her age and experience were used to correct Change Healthcare's operational deficiencies, including those of the two, newly appointed non-Black Directors, Gonzalez and Easterwood. Carroll also stated that UTHSCH violated state and federal laws by engaging in disparate treatment when hiring non-Black employees for Director-level positions when there are Black employees in the department who are qualified for the positions.

Construing her EEOC charge liberally, we conclude that Carroll's charge included an adequate factual basis to put UTHSCH on notice that Carroll was complaining that UTHSCH discriminated against her based on race when it denied her a promotion and instead placed Gonzalez and Easterwood in the Director positions in 2020. Because we conclude that these claims fall within the scope of her administrative charge, the trial court did not lack jurisdiction over her 2020 failure-to-promote claims. *See Salman v. KIPP, Inc.*, No. 01-19-00886-CV, 2021 WL 2931360, at *6 (Tex. App.—Houston [1st Dist.] July 13, 2021, pet. denied) (mem. op.) (concluding plaintiff provided adequate factual basis to put charter school on notice that she was complaining of discrimination based on retaliation where she alleged details of two occasions when she complained about school's decisions that could have possibly led to her termination); *Alief Indep. Sch. Dist. v. Brantley*, 558

S.W.3d 747, 756–57 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (concluding plaintiff's discrimination charge included adequate factual basis to put school district on notice that he was complaining of discrimination based on his race and gender resulting in hostile work environment where charge generally described actions or practices about which he complained); *Santi*, 312 S.W.3d at 805 (holding plaintiff's EEOC charge included adequate factual basis to put defendant university on notice that plaintiff was complaining of gender discrimination where she alleged instances of being treated differently from male counterparts). We overrule UTHSCH's first issue.

## C. Timeliness of Filing

In its second issue, UTHSCH argues that even if Carroll's EEOC charge referenced the purportedly denied promotions in 2020, her failure to file an EEOC charge within 180 days of the denied promotions rendered the discrimination claims time barred and the trial court without jurisdiction. It further argues that any retaliation claim asserted by Carroll based on Carroll receiving an untimely performance evaluation, UTHSCH's initial failure to promote her to a manager position in 2018, her raise of only $500 more a year than a white employee promoted several weeks later, and her assignment to a deplorable department in October 2020 are similarly time barred. Carroll responds that the discriminatory and retaliatory

acts are one continuing violation that constitute an ongoing discriminatory practice or policy and are therefore not time barred.

A person claiming a violation of the TCHRA must first exhaust her administrative remedies prior to bringing a civil action. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010); *Lopez*, 368 S.W.3d at 701 ("The exhaustion of administrative remedies is a jurisdictional prerequisite to file suit for unlawful employment practices.") (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996); *Santi*, 312 S.W.3d at 804 ("Failure to timely file an administrative complaint deprives Texas trial courts of subject-matter jurisdiction"))). To exhaust administrative remedies under the TCHRA, a plaintiff must: (1) file a complaint with the TWC within 180 days of the alleged discriminatory act, (2) allow the TWC 180 days to dismiss or resolve the complaint, and (3) file suit in district court within 60 days of receiving a right-to-sue letter from the TWC and no later than two years after the complaint was filed. *See* TEX. LABOR CODE §§ 21.202, .208, .254, .256. "The purposes underlying the administrative-complaint requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the administrative agency and the employer an opportunity to resolve the dispute." *Cuadra*, 682 S.W.3d at 634 (quoting *Lopez*, 368 S.W.3d at 701 (citing *Pacheco*, 448 F.3d at 789; *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878–

79 (5th Cir. 2003)). The timely filing of a sworn complaint under the Labor Code is "mandatory and jurisdictional." *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 486 (Tex. 1991). This 180-day statute of limitations runs from the date the alleged unlawful employment practice occurs. *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 504–05 (Tex. 2012).

An exception to application of the 180-day limitations period for the discriminatory act is the continuing violation doctrine. *Drew v. City of Hous.*, 679 S.W.3d 779, 785 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (citing *Santi*, 312 S.W.3d at 804). The doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *Id.* at 804–05. Under the continuing violation theory, a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. *Id.* at 805 (citing *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 493 (Tex. App.—Houston [1st Dist.] 2006, no pet.)). "For example, a claim of a hostile work environment is a continuing violation, while 'termination, failure to promote, denial of transfer, or refusal to hire' are discrete acts." *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). A plaintiff need not establish that all the alleged discriminatory conduct occurred within 180 days if the plaintiff can show a series of related acts, including one or more that are within the

23

limitations period. *Tex. S. Univ. v. Nayer*, No. 01-21-00497-CV, 2023 WL 138621, at \*3 (Tex. App.—Houston [1st Dist.] Jan. 10, 2023, no pet.) (mem. op.) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004)). The "focus is on what event should, in fairness and logic, have alerted the average layperson to act to protect his or her rights." *Autonation*, 226 S.W.3d at 493 (quoting *Wal-mart Stores v. Davis*, 979 S.W.2d 30, 42 (Tex. App.—Austin 1998, pet. denied)).

UTHSCH acknowledges that Carroll's discrimination claim based on its failure to promote her to the Director of Centralized A/R Operations position in April 2021 is within 180 days of the date she filed her administrative complaint and thus timely. However, UTHSCH argues that the continuing violation doctrine cannot salvage her October 2020 failure-to-promote claims and her retaliation claim because the doctrine does not apply to discrimination and retaliation claims. It further asserts that, even if it did, the conduct about which Carroll complains—denial of a timely performance evaluation, department reassignment, and failures to promote—were discrete acts and do not constitute a continuing violation.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the United States Supreme Court distinguished between discrete acts of discrimination which are not actionable if time barred, even if they are related to acts alleged in timely filed charges, and claims which are "comprised of a series of separate acts

24

that collectively constitute one unlawful employment practice." *See id*. at 113–15, 117.

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice."
>
> . . . .
>
> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

*Id.* at 114–15.

Several Texas courts, including this one, have similarly held that the continuing violation doctrine does not apply to discrete discriminatory and retaliatory claims. *See Nayer*, 2023 WL 138621, at *4 (concluding plaintiff's involuntary reassignment with accompanying loss in title and pay was discrete act to which continuing violation doctrine did not apply); *San Benito Consol. Indep. Sch. Dist. v. Leal*, No. 13-20-00569-CV, 2022 WL 243725, at *4 (Tex. App.—Corpus Christi–Edinburg Jan. 27, 2022, no pet.) (mem. op.) ("But like Leal's demotion, a failure to promote is a discrete discriminatory act with its own clock for filing a timely charge of discrimination. . . . It cannot be used 'to pull in [a] time-barred discriminatory act.'") (quotation omitted); *Univ. of Texas-Pan Am. v. Miller*,

No. 03-10-00710-CV, 2013 WL 4818355, at *8 (Tex. App.—Austin Aug. 28, 2013, no pet.) (mem. op.) (noting "[o]ne-time events such as termination, failure to hire or promote, denial of transfer, or demotion are discrete acts that are conceptually different from hostile environment claims and 'cannot be lumped together with the day-to-day pattern of racial harassment'"); *Santi*, 312 S.W.3d at 806 (concluding plaintiff did not allege continuing violation or "organized scheme leading to and including a present violation" but rather complained of two discrete acts separated by more than six months—decision to not renew her contract and denial of right to attempt to license derivative materials); *see also Metro. Transit Auth. of Harris Cnty. v. Douglas*, 544 S.W.3d 486, 497 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (concluding continuing violation doctrine does not apply to discrimination and/or retaliation claims under *Morgan*); *Pharr–San Juan–Alamo Indep. Sch. Dist. v. Lozano*, No. 13-16-00408-CV, 2018 WL 655527, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 31, 2018, pet. denied) (mem. op.) (noting distinction between one-time events such as termination, refusal to hire or promote, or demotion which are discrete adverse actions that cannot be saved by continuing violation doctrine and indiscrete employment practices that constitute continuing violations such as hostile work environment claims).

Carroll's discrimination claim that UTHSC failed to promote her to a Director position in October 2020 in favor of Gonzalez and Easterwood, alleges discrete acts

26

to which the continuing violation doctrine does not apply. *See Morgan*, 536 U.S. at 113; *Leal*, 2022 WL 243725, at *4. Similarly, Carroll's retaliation claim alleging that UTHSCH retaliated against her by denying her a timely performance evaluation in 2020, increasing her annual salary in 2018 by only $500 more than a white employee who was promoted several weeks later, and assigning her to a deplorable department in October 2020 do not constitute "an organized scheme leading to and including a present violation" as required to show a continuing violation but, rather, complain of discrete acts which are also time barred. *See Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 86 (Tex. App.—Fort Worth 2003, pet. denied) (concluding plaintiff's discrimination claims alleging that employer failed to provide her with assistant and assigned her an extra region were discrete acts that did not constitute "an organized scheme leading to and including a present violation"); *Nayer*, 2023 WL 138621, at *3 (concluding plaintiff's involuntary reassignment with accompanying loss in title and pay was discrete act and continuing violation doctrine did not apply); *Leal*, 2022 WL 243725, at *3 (concluding discrimination and retaliation claims based on workspace, demotion, and negative evaluation could not be saved by continuing violation doctrine). The trial court lacked jurisdiction over Carroll's race discrimination and retaliation claims based on these pre-February 2021 events. We sustain UTHSCH's second issue.

27

**D.      Carroll's 2021 Failure-to-Promote Claim**

In its third issue, UTHSCH contends that Carroll's 2021 failure-to-promote race and age discrimination claims, although timely, fail because she did not assert a valid claim falling within the TCHRA's limited waiver of sovereign immunity. Specifically, it argues that Carroll cannot establish a prima facie discrimination claim for UTHSCH's failure to promote her to the Director, A/R Operations role in April 2021. In its fourth issue, UTHSCH asserts that even if Carroll had stated a prima facie case, UTHSCH presented legitimate nondiscriminatory reasons for not promoting her and Carroll did not present any evidence to show that UTHSCH's proffered reasons were a pretext for discrimination. Carroll responds that her pleadings provided more than a scintilla of jurisdictional evidence to raise a genuine issue of material fact as to each essential element of her race and age discrimination claims.

The Texas Supreme Court has held that the TCHRA waives a governmental employer's immunity for TCHRA claims asserted against the employer, "but only when the plaintiff states a claim for conduct that actually violates the statute." *Alamo Heights*, 544 S.W.3d at 770. It is well settled that "when the Legislature conditions an immunity waiver on the existence of a statutory violation, the elements of the violation are jurisdictional facts." *Id.* at 784. Because UTHSCH's plea challenged Carroll's pleadings and the existence of jurisdictional facts establishing the trial

28

court's jurisdiction over Carroll's claims, Carroll was required to present evidence raising a fact issue as to the jurisdictional elements challenged by UTHSCH. *See Alamo Heights*, 544 S.W.3d at 764 (stating "when jurisdictional evidence negates the prima facie case or . . . rebuts the presumption it affords, some evidence raising a fact issue on retaliatory intent is required to survive a jurisdictional plea") (citing *Garcia*, 372 S.W.3d at 642 (concluding that school district's evidence that former employee was replaced by someone three years older negated one of essential elements of prima facie case and, thus, triggered employee's duty to raise fact question on issue of discriminatory intent)).[4]

When a plaintiff proceeds along the *McDonnell-Douglas* burden-shifting framework, "the prima facie case is the necessary first step to bringing a discrimination claim under the TCHRA" against a governmental employer. *Id.* While the plaintiff's burden at this stage of the proceeding is not onerous, *see Garcia*, 372 S.W.3d at 634, if a plaintiff fails to establish a prima facie case against a governmental unit or overcome the rebuttal evidence, then the trial court lacks

---

[4] Contrary to Carroll's assertion that only the prima facie elements of her claims are relevant in determining UTHSCH's plea, the Texas Supreme Court has held that "limit[ing] the jurisdictional analysis to the prima-facie-case-element, meaning evidence regarding the other two stages was not considered . . . was error. All elements of a TCHRA circumstantial-evidence claim are, perforce, jurisdictional." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 783 (Tex. 2018) (stating that if jurisdictional evidence rebuts prima facie case, the entire *McDonnell Douglas* framework is fully implicated, and sufficient evidence of pretext and causation must exist to survive jurisdictional plea).

jurisdiction and must dismiss the case. *See id.* at 637 (explaining that consequences of plaintiff's failure to demonstrate prima facie case "means the plaintiff never gets the presumption of discrimination and never proves his claim" and "that failure also means the court has no jurisdiction and the claim should be dismissed").

The requirements for establishing a prima facie case under TCHRA "vary depending on the circumstances." *Univ. of N. Tex. Health Sci. Ctr. v. Paul*, No. 02-22-00305-CCV, 2023 WL 4779480, at *3 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op.). To establish a prima facie case of discrimination based on the employer's failure to promote, the employee must show that (1) she is a member of a protected class; (2) she sought and was qualified for an available employment position; (3) despite her qualifications, the employee was not selected for the position; and (4) the employer selected someone not in the employee's protected class or continued to seek applicants with the employee's qualifications. *Anderson*, 458 S.W.3d at 645 (citing *Elgaghil v. Tarrant Cnty. Junior Coll.*, 45 S.W.3d 133, 139 (Tex. App.—Fort Worth 2000, pet. denied); *see also Douglas*, 651 S.W.3d at 133; *Tex. Dep't of Aging & Disability Servs. v. Lagunas*, 618 S.W.3d 845, 853 (Tex. App.—El Paso 2020, no pet.); *Dall. Indep. Sch. Dist. v. Allen*, No. 05-16-00537-CV, 2016 WL 7405781, at *9 n.11 (Tex. App.—Dallas Dec. 22, 2016, pet. denied) (mem. op.) (citing *Anderson*, 458 S.W.3d at 645).

In its plea, UTHSCH argued that Carroll could not establish the fourth element of her prima facie race and age discrimination claims because it selected someone within Carroll's protected classes (African American and over the age of forty). In support of its argument, UTHSCH attached to its plea the sworn affidavit of Kristi Bradley, Vice-President and Chief Revenue Cycle Officer at UTHSCH. Bradley testified that "UTHSCH extended an offer to Moleshay Williams in February 2021. She is an African American woman over the age of 40. . . . She began at UTHSCH on April 5, 2021." Carroll, however, did not come forth with evidence to raise a fact issue on the challenged element of her prima facie case. *Alamo Heights*, 544 S.W.3d at 764 (stating that when jurisdictional evidence negates prima facie case some evidence raising fact issue is required to survive jurisdictional plea); *Simpson*, 2021 WL 3083104, at *3 (noting that once governmental unit asserts and provides evidentiary support for its plea, plaintiff is then required to show that disputed fact issue exists on jurisdictional issue). In fact, Carroll's petition alleges that "on April 5, 2021, [plaintiff] was passed over for a third Director of AR Operations role when Moleshay (Shay) Williams, a significantly younger, less experienced candidate who happens to be Black, assumed the role." Carroll did not present any evidence demonstrating that UTHSCH filled the Director position for which she had applied with an individual who was not a member of her protected classes, African American and over the age of forty. *See Rock*, 608 S.W.3d at 310 (concluding African

American school principal was not "replaced" by another outside of her protected class, as requirement to establish prima facie case of discrimination, where Caucasian staff member only temporarily assumed principal's duties until school hired permanent replacement who was a member of principal's protected class); *Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 471–72 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Gonzalez does not contest . . . that he was replaced by someone from the same protected class. Since Gonzalez concedes that element of his racial discrimination cause of action, the trial court did not err in granting summary judgment on that cause of action."); *Acosta v. Gov't Emps. Credit Union*, 351 S.W.3d 637, 643 (Tex. App.—El Paso 2011, no pet.) (concluding employee failed to establish fourth element of prima facie age discrimination claim where evidence showed that employee was replaced by person within protected class, i.e., person over the age of forty, who was only four years younger); *see also Pena v. Cnty. of Starr*, No. 01-14-00462-CV, 2013 WL 6672476, at *6 (Tex. App.—San Antonio Dec. 18, 2013, no pet.) (mem. op.) (concluding plaintiff failed to raise fact issue on his age discrimination claim where he did not point to any evidence showing that county replaced him with younger worker).

Carroll argues that UTHSCH is attempting "to usurp the discovery process by providing the trial court with assertions that have not been fully disclosed through a discovery process." She asserts that we should only consider the trial court's

32

determination that it had subject matter jurisdiction over her claims based on the sufficiency of the pleadings. Carroll misapprehends the basis of UTHSCH's plea. When, as here, a governmental entity "challenges the plaintiff's case *with evidence*, the jurisdictional inquiry focuses on *the evidence* and whether the plaintiff can create a fact issue." *Alamo Heights*, 544 S.W.3d at 785.

Having failed to establish a prima facie case, Carroll's race and age discrimination claims based on UTHSCH's failure to promote her to the Director, Centralized A/R Operations role in 2021 are barred. *See Garcia*, 372 S.W.3d at 636–37. We sustain UTHSCH's third issue.[5]

## E.     Carroll's Retaliation Claims

In its fifth issue, UTHSCH contends that Carroll's retaliation claims do not fall within the TCHRA's limited waiver of immunity because (1) most of her claims were not timely exhausted or fail to identify an activity that is protected under the TCHRA, (2) the alleged retaliatory acts are not materially adverse employment actions on which a retaliation claim can be based, and (3) Carroll did not refute UTHSCH's evidence showing that none of the Search Committee members who decided not to advance her application for final review for the Director position in

---

[5]     Because Carroll's race and age discrimination claims fail at the prima facie stage, we do not reach UTHSCH's fourth issue contending that the trial court lacked subject matter jurisdiction over those claims because Carroll failed to rebut UTHSCH's legitimate, nondiscriminatory reason for not promoting her.

2021 were aware of her protected activity. Carroll responds that she provided more than a scintilla of jurisdictional evidence to raise a fact issue as to each element of her retaliation claims.

The TCHRA prohibits an employer from retaliating against an employee for engaging in certain protected activities. *See* TEX. LABOR CODE § 21.055. Protected activities consist of: (1) opposing a discriminatory practice, (2) making or filing a charge, (3) filing a complaint, and (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. *See id.*; *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015). To prevail in a retaliation case, the employee must first establish a prima facie case showing that: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 441 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). The causation standard for the *McDonnell Douglas* prima facie case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action. *Alamo Heights*, 544 S.W.3d at 782. However, if the employer provides evidence of a legitimate reason for the adverse action, the employee must prove the adverse action would not have occurred "but for" the protected activity. *Id.* The but-

34

for causation standard is significantly more difficult to prove than prima facie causation. *Id.*

### 1.  Prima Facie Case

In her response to UTHSCH's plea, Carroll argued that she engaged in protected activity by filing an internal complaint of discrimination and harassment with UTHSCH in October 2020 and filing a charge of discrimination with the EEOC and TWCCRD on August 18, 2021. It is undisputed that Carroll's filing of an internal discrimination complaint in October 2020 and a charge of discrimination on August 18, 2021 are protected activities. *See* TEX. LAB. CODE § 21.055; *Nicholas*, 461 S.W.3d at 137.[6]

To satisfy the second element of her prima facie case, Carroll asserts that UTHSCH took adverse employment action against her after she engaged in protected activity when it (1) singled her out for excessive discipline, (2) denied her a timely performance review, (3) assigned her to a deplorable department, and (4) denied her promotions.

---

[6]  To the extent Carroll complains that she was denied promotions due to her internal complaints that UTHSCH's billing and coding procedures were non-compliant, these actions do not qualify as protected activities under the TCHRA and cannot support her retaliation claim. *See Lopez*, 259 S.W.3d at 154; *Barnes v. Tex. A & M Univ. Sys.*, No. 14-1300646-CV, 2014 WL 4915499, at *4 (Tex. App.—Houston [14th Dist.] Sept. 30, 2014, pet. denied) (mem. op.) (stating plaintiff must present evidence that she complained about harassment or discrimination based on race, color, disability, religion, sex, national origin, or age for complaint to qualify as protected activity for purpose of establishing prima facie case of retaliation) (citing *Chandler*, 376 S.W.3d at 823–24)).

### a. *Excessive Discipline, Delayed Performance Review, and Reassignment*

Carroll argues that UTSCH's actions in excessively reprimanding her, failing to provide her with a timely performance review, and assigning her to a deplorable department are actionable adverse employment actions. We disagree. The TCHRA does not provide relief for every decision made by an employer that might have some tangential effect upon employment decisions. *Anderson*, 458 S.W.3d at 644. The TCHRA does not protect employees from all retaliatory employment actions, only from actions that are "materially adverse," which "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Alamo Heights*, 544 S.W.3d at 788 (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67–68 (2006); *Montgomery Cnty. v. Park*, 246 S.W.3d 610, 614 (Tex. 2007)). An adverse employment action requires a significant change in employment status. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Univ. of Tex. at El Paso v. Esparza*, 510 S.W.3d 147, 160 (Tex. App.—El Paso 2016, no pet.). Adverse employment decisions generally involve hiring, granting leave, discharging, promoting, and compensating employees. *Green v. Admins. of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002); *Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 575 (Tex. App.—Houston [14 Dist.] 2004, no pet.); *Elgaghil*, 45 S.W.3d at 143. Actions such as disciplinary filings, supervisor's reprimands, poor performance reviews, negative peer evaluations, verbal threats to

fire, and criticism of the employee's work do not constitute actionable adverse employment decisions. *See Winters*, 132 S.W.3d at 575; *Elgaghil*, 45 S.W.3d at 143; *see also Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.).[7]

### b. *2020 Denial of Promotions*

Carroll points to UTHSCH's failure to promote her to Director positions in September 2020 as evidence that UTHSCH retaliated against her for engaging in protected activity. As discussed above, Carroll failed to timely exhaust her administrative remedies as to these employment actions because she did not file her EEOC charge within 180 days of the alleged retaliatory conduct, and the continuing violation doctrine does not apply to discrete discriminatory and retaliatory actions. *See Nayer*, 2023 WL 138621, at *4; *Leal*, 2022 WL 243725 at *3. Further, an employer cannot retaliate against an employee for engaging in protected activity when the alleged adverse employment actions occurred before the employee engaged in protected activity. *See Esparza v. Univ. of Tex. at El Paso*, 471 S.W.3d

---

[7]     We further note that Carroll does not identify the dates on which she alleged she was subjected to excessive reprimands. Courts will not consider undated allegations when analyzing whether sovereign immunity has been waived because a plaintiff is statutorily required to provide at least an approximate date on which the alleged acts occurred. *See Olivarez v. Univ. of Tex. at Austin*, No. 03-05-00781, 2009 WL 1423929, at *3 (Tex. App.—Austin May 21, 2009, no pet.) (mem. op.) (stating undated, conclusory allegations of misconduct will not support a claim of employment discrimination). Failure to provide dates "deprive[] the trial court of jurisdiction over any events for which she did not specify dates." *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 808 (Tex. App.—Austin 2009, no pet.).

903, 914 (Tex. App.—El Paso 2015, no pet.) ("It is axiomatic that UTEP's actions that occurred before Esparza filed her EEOC charge could not have been caused by the EEOC filing."); *Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 263 (Tex. App.—Dallas 2009, pet. denied) (concluding plaintiff could not show causal link in retaliation claim when employer's alleged acts in retaliation occurred before plaintiff engaged in any protected activity). Here, UTHSCH's alleged failure to promote Carroll to the Director positions in September 2020 predated both her internal complaint in October 2020 and the filing of her EEOC charge in August 2021. Therefore, Carroll's retaliation claims based on UTHSCH's failure to promote her in 2020 are barred by sovereign immunity because she did not engage in TCHRA-protected activity before these employment actions occurred.

### c. *2021 Denial of Promotion*

UTHSCH does not dispute that Carroll's filing of an internal complaint of discrimination in October 2020 was a protected activity, and that its failure to promote her in April 2021 qualifies as an adverse employment action. It argues, however, that Carroll cannot establish the third element of her prima facie case related to this claim—that is, she cannot show a causal link between her internal complaint and the Search Committee's decision not to interview her for the position.

In its plea, UTHSCH argued that Carroll could not establish a causal link between her protected activity and UTHSCH's failure to promote her because she

failed to allege or provide any evidence that the Search Committee knew about Carroll's protected activity, i.e., her 2020 internal complaint, at the time it decided not to promote her. UTHSCH attached to its plea the sworn affidavit of Kelly Johnson, Director of Vendor Management and Business Operations for UTHSCH. Johnson stated that she was the Chair of the Search Committee for the Director of Centralized A/R Operations position for which Carroll applied. She stated that, at the conclusion of the first round of the selection process, the executive recruiter recommended nine external candidates and one internal candidate to the Search Committee for review and consideration. Carroll was the internal candidate. During the second round, the Search Committee reviewed Carroll's application and decided not to interview her or recommend her for a final round interview with Lehman, the Hiring Manager. Johnson stated that the Search Committee did not receive, review, or request any information about complaints filed by Carroll with UTHSCH regarding billing compliance, discrimination, or retaliation, or her performance evaluations, nor did it engage in any discussions regarding Carroll's performance evaluations or internal complaints.

In her affidavit, Bradley, UTHSCH's Vice-President and Chief Revenue Cycle Officer, stated that she selected the Search Committee members and expressly chose individuals with no knowledge of Carroll's internal complaints to ensure a fair

39

process should Carroll choose to apply for the position.[8] Bradley stated that while she and Lehman knew of Carroll's internal complaints, Carroll's application never reached them for consideration because the Search Committee did not interview or advance Carroll further in the process. Bradley stated she was unaware Carroll had even applied for the position before she received her EEOC charge. She stated that UTHSCH extended an offer to Williams in February 2021, and Williams began her employment on April 5, 2021.

Temporal proximity between protected activity and an adverse employment decision can be evidence of a causal connection when a person with input into the employment decision was aware of the protected activity and when the proximity is "very close." *Rock*, 608 S.W.3d at 314 (quoting *Alamo Heights*, 544 S.W.3d at 790). While Carroll alleged that the decisionmakers were aware that she had engaged in protected activity, she does not point to evidence raising a fact issue regarding whether those responsible for choosing the candidate to fill the position knew of her internal complaint. *See Alamo Heights*, 544 S.W.3d at 789–90 (concluding school district's adverse employment action of placing teacher on growth plan was not causally linked to teacher's protected activity of filing EEOC charge, as required for teacher's retaliation claim against district under TCHRA; although teacher was

---

[8]  The record does not include any sworn testimony from the other Search Committee members on this issue.

placed on plan two to three weeks after filing charge, school principal and human resources representative made decision to implement growth plan before they knew of charge); *see also Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (granting summary judgment in favor of employer on retaliation claim where employee had no evidence that decisionmaker was aware of employee's protected activity); *Tex. Health & Human Servs. Comm'n v. Enriquez*, 642 S.W.3d 21, 35–36 (Tex. App.—El Paso 2021, no pet.) (finding no causal link where, among other things, there was no evidence in record that final decisionmakers involved in plaintiff's termination had knowledge of plaintiff's previously filed EEOC discrimination charge); *Marsaglia v. Univ. of Tex. at El Paso*, 22 S.W.3d 1, 5 (Tex. App.—El Paso 1999, pet. denied) (affirming summary judgment in favor of employer in retaliation case where employee failed to produce evidence that decisionmaker had knowledge of her protected activity and where decisionmaker filed affidavit denying he had any such knowledge).

Further, while the causation burden in the prima facie case "can be satisfied merely by proving close timing between the protected activity and the adverse action," *Alamo Heights*, 544 S.W.3d 782, the Fifth Circuit and this Court have held that a "four-month time lapse, without more, is insufficient evidence to establish the causal link required to make a *prima facie* case of retaliation." *Flanner v. Chase Inv. Servs. Corp.*, 600 F. App'x 914, 922 (5th Cir. 2015); *Rock*, 608 S.W.3d at 314 ("This

41

Court has held that four months between an employee's engaging in protected activity and the employee's termination, without more, does not raise a fact issue regarding a causal link.") (citing *Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 523 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). Here, the evidence shows that approximately four months elapsed between Carroll's October 2020 internal complaint and UTHSCH's extension of the offer to Williams for the position of Director of Centralized A/R Operations in February 2021.

However, even assuming Carroll stated a prima facie retaliation claim based on UTHSCH's 2021 failure to promote her, any presumption raised has been rebutted because UTHSCH articulated a legitimate, nondiscriminatory reason for not promoting her: it did not select Carroll for the Director position because she lacked the "highly preferred" experience with Epic Systems explicitly listed in the job description and, instead, it promoted Williams who, in addition to being highly qualified, had extensive, recent experience with Epic and its implementation as well as Epic certification. The burden then shifted back to Carroll to present evidence that UTHSCH's articulated reason was pretextual, and that she would have been promoted "but for" her internal complaint. *See Rock*, 608 S.W.3d at 308, 313. In evaluating but-for causation evidence in retaliation cases, we examine all the circumstances, including (1) temporal proximity between the protected activity and the adverse action, (2) knowledge of the protected activity, (3) expression of a

negative attitude toward the employee's protected activity, (4) failure to adhere to relevant established company policies, (4) discriminatory treatment in comparison to similarly situated employees, and (5) evidence the employer's stated reason is false. *Alamo Heights*, 544 S.W.3d at 790.

Application of these factors does not support a causal link here. As noted above, the four-month gap between Carroll's internal complaint and UTHSCH's extension of an offer to Williams does not constitute the "very close" temporal proximity relevant to show causation. *See Flanner*, 600 F. App'x at 922; *Rock*, 608 S.W.3d at 314. There is no evidence that the Selection Committee members knew of Carroll's 2020 complaint or that UTHSCH expressed a negative attitude toward Carroll's protected activity, failed to adhere to its established company policies, or treated Carroll differently than other similarly situated employees. There is also no evidence that UTHSCH's stated reason for promoting Williams rather than Carroll was false. Although Carroll asserts that the decisionmakers knew she had engaged in protected activity, she was being treated unfairly because she was the only African American in her department, and UTHSCH's proffered reason for not promoting her was pretext to conceal retaliatory intent, these assertions without evidence in the record to support them are insufficient to create a fact issue as to causation. *See Alamo Heights*, 544 S.W.3d at 792. Simply put, the record bears no evidence that UTHSCH's stated reason was mere pretext. Because Carroll has failed to raise a fact

issue that she would have been promoted but for her internal complaint, immunity has not been waived as to Carroll's retaliation claim. The trial court erred in denying UTHSCH's plea as to this claim. We sustain UTHSCH's fifth issue.

## F. No Disparate Impact Claim

In her response to UTHSCH's plea and in her brief on appeal, Carroll asserts that this case involves a disparate impact claim as well as a disparate treatment claim. In its reply brief, UTHSCH responds that any such claim is jurisdictionally barred.

A disparate impact claim is substantially different than a disparate treatment claim. *Brownsville Indep. Sch. Dist. v. Alex*, 408 S.W.3d 670, 676 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.) (citing *Pacheco*, 448 F.3d at 791). As a result, each type of claim must first be exhausted in the underlying administrative complaint. *See Pacheco*, 448 F.3d at 791–92. "A would-be disparate-impact plaintiff must also allege that her employer uses "(1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class." *Poindexter*, 306 S.W.3d at 811–12 (quoting *Pacheco*, 448 F.3d at 791). Failure to allege these elements in an administrative charge bars a plaintiff from bringing a disparate impact claim in a court of law. *See Pacheco*, 448 F.3d at 791–92.

To the extent Carroll seeks to raise a disparate impact claim, such a claim is barred because her EEOC charge failed to identify a UTHSCH facially neutral policy that has a disproportionate adverse impact on older individuals or African

44

Americans. Thus, the trial court lacked jurisdiction over any such disparate impact claim. *See Poindexter*, 306 S.W.3d at 812.

## Conclusion

We reverse the trial court's order denying UTHSCH's plea to the jurisdiction and render judgment dismissing Carroll's claims of race and age discrimination and retaliation claims for lack of subject matter jurisdiction.


                                        Amparo Monique Guerra
                                        Justice

Panel consists of Justices Kelly, Hightower, and Guerra.